(94 N. W. Rep. 1041.)

---

CARL WEGNER *v.* DAVID LUBENOW, CARL KREISER AND MARTIN BENES.

Opinion filed May 28, 1903.

**Gross Sum Paid for Life Lease of Agricultural Land, Not Rent.**

1. Section 3310, Rev. Codes, which declares invalid all leases of agricultural lands which are made for a longer period than ten years, in which rent or service is reserved, construed, and *held* that the term "rent," as used in said section, is to be construed in its original and technical sense, as profit arising out of the land and payable periodically. Further, that a gross sum paid for a life lease of agricultural land is not "rent," within the meaning of said section, but is consideration for the conveyance of the life estate, and such a lease is not invalid under said section. Whether said section applies to life leases at all, or whether leases to which it does apply are entirely void, or void only as to the excess, is not determined.

**Lease of Agricultural Land for Forty Years, or Life of Lessees, Conveys a Life Estate.**

2. A certain lease of agricultural land "for the full term of forty years or during the full term of the natural life" of the lessees, for a cash consideration of $200, construed, and *held* to convey a life estate, and not an estate for years, and that the same is not within the condemnation of section 3310, Rev. Codes.

**Where No Selection of Homestead from Large Body of Land is Made, Wife's Failure to Join in Lease Not Fatal Thereto.**

3. It is *held,* on the facts set out in the opinion, from which it appears that the lessor had not selected his homestead, and that he still had 300 acres contiguous to the family residence from which to make a selection, that the failure of his wife to join in the lease in question did not render it invalid. *Foogman* v. *Patterson,* 83 N. W. 15, 9 N. D. 254, followed.

**To Authorize Recovery of Treble Damages, the Entry Must Be Forcible.**

> 4. To authorize a recovery of treble damages for a forcible ejectment from real property, under section 5007, Rev. Codes, it is necessary that the entry shall be forcible, but it is not necessary that the force shall be actually applied. It is enough if it is present and threatened, and is justly to be feared.

**Verdict Justified by Evidence.**

> 5. It is *held* in this case that there is evidence of a substantial nature fairly tending to sustain the verdict of the jury, and it cannot, therefore, be disturbed.

Appeal from District Court, Richland County; *W. S. Lauder,* J.

Action by Carl Wegner against David Lubenow and others. Judgment for plaintiff, and defendants appeal.

Affirmed.

*Purcell & Bradley,* for appellants.

The testimony did not bring the plaintiff within the provisions of section 5007, so as to entitle him to treble damages, as there was no forcible ejection under the testimony. Plaintiff testified that no force whatever was used; and that upon mere assertion of Sunderhauf, that plaintiff had no right to stay and would have to move, he voluntarily left the premises, Sunderhauf in no manner interfering with his person or property.

The lease on which plaintiff based his case is void under section 3310. Like provisions are found in section 717 Civil Code of Cal., and section 14, article 1, constitution of New York. In *Odell* v. *Durant,* 62 N. Y. 524, an action to recover rent on a seventeen year lease of agricultural land, the objection, the lease was void under above provision, held fatal to recovery. In *Clark* v. *Barnes,* 76 N. Y. 301, two leases, one for eight, and another for twelve years from expiration of first, it was held, that the two constituted one lease, and the same was held void *in toto.*

The lease is void under section 3608 relating to conveyance of homestead. Homestead can be conveyed only in the mode prescribed by law, and failure of wife to join in deed renders it void. *Houghton* v. *Lee,* 50 Cal. 101; *Hershy* v. *Dennis,* 50 Cal. 77; *Gagliardo* v. *Dumont,* 54 Cal. 496; *Maudlin* v. *Cox,* 7 Pac. Rep. 805.

The conveyance in question not signed by wife is void. *Flege* v. *Garvey,* 47 Cal. 371; *Wea Gas Coal & Oil Co.* v. *Franklin Land Co.,* 38 Pac. Rep. 790.

*A. L. Parsons* and *Redmon, Ink & Wallace,* for respondents.

The question of homestead is not in issue; it is not pleaded, and if it were, it could not avail, because no selection having been made as provided by section 3606, Rev. Codes, there was no way to determine its limits, out of the half section in which it was embraced. *Foogman* v. *Patterson,* 9 N. D. 260, 83 N. W. Rep. 15.

The instrument in question is not a lease but a conveyance of a life interest. No rent was reserved, and that a life interest was intended is shown by the extensive improvement made by the grantees of the life interest. Full consideration was paid in advance. If the intention is not clear, circumstances surrounding the execution may be considered. *Warring* v. *Louisville R. Co.,* 19 Fed. Rep. 863; *Edwards* v. *McLean,* 122 N. Y. 302, 25 N. E. Rep. 483. Where there are written and printed clauses, if inconsistent, the written prevail. *Heiple* v. *Reinhart,* 100 Iowa 525, 69 N. W. Rep. 871; *Wilcox* v. *Montour Iron, etc., Co.,* 147 Pa. St. 540.

The cases of *O'Dell* v. *Durant,* 62 N. Y. 524, and *Clark* v. *Barnes,* 76 N. Y. 301, are not applicable. They were brought upon ordinary leases where rents were reserved, not upon grants of life interest for a specific sum.

YOUNG, C. J. Plaintiff commenced this action in the district court of Richland county to recover possession of twenty acres of agricultural land situated in that county, and for treble damages for the use of the same while it was witheld by the defendants. The trial was to a jury. A verdict was returned in favor of the plaintiff upon all the issues, and for $400 damages. Defendant moved for a new trial, his motion was overruled, and judgment was entered upon the verdict. This appeal is from the judgment.

The plaintiff bases his right to the possession of the premises in question upon a written contract or lease executed by the defendant Carl Krieser. The defendants claim that the lease is void. The facts essential to a determination of the questions involved are as follows: On June 13, 1892, Carl Krieser owned, and with his family resided upon, the west half of section 13, township 131, north of range 52 west. On the date above named, Krieser, his wife not joining him, gave a written lease of twenty acres of the above tract to the plaintiff and his wife. In preparing the instrument an ordinary blank form of lease was used, and such additions were made

in writing as were necessary to express their contract. So far as important, it is as follows:

"This indenture, made this 13th day of June, 1892, by and between Carl Krieser, party of the first part, lessor, and Carl Wegner and Wilhelmina Wegner, his wife, parties of the second part, lessees:

"Witnesseth: That the said party of the first part, in consideration of the rents and covenants hereinafter mentioned, does hereby demise, lease and let unto the said party of the second part, and the said parties of the second part do hereby hire and take from the said party of the first part, the following described premises situated in the county of Richland and state of North Dakota, to wit: The south half of the southwest quarter of the southwest quarter, in section 13, township 131 north of range 52 W.," containing twenty acres;

"To have and to hold the above-rented premises unto the said lessee *and their* heirs and assigns for and during the full term of *forty years* from and after the *13th* day of *June, 1892, or during the full term of his natural life or during the term of his wife's natural life or both.* And the said lessee agreed to and with the said lessor to pay as rent for the above mentioned premises the sum of *two hundred* dollars *paid cash in hand, receipt whereof is hereby acknowledged; in consideration of such payment they are to have full and absolute possession of aforesaid premises during the full term of their natural lives without any dictation on the part of said lessor.*  *  *  *  "

The lease was signed by the plaintiff and his wife and by the lessor, and was duly acknowledged and recorded. The portions in italics are in writing. The remaining portions are printed. The plaintiff paid to Krieser $200 in cash for the interest conveyed by the lease, and immediately took possession of the premises, built a house and barn thereon at a cost of $740, and occupied the premises as his home until April 24, 1900, when he was ejected by the defendant's agent. In 1895 Krieser and his wife deeded the northwest quarter to David Lubenow, and in the following year they also deeded the southwest quarter to him. In 1889 Lubenow entered into a contract to convey both quarter sections to the defendant Benes. In none of these instruments was the twenty acre tract in question excepted. All of the defendants had notice, however, of plaintiff's interest in the premises.

All of the twenty errors assigned by appellants' counsel relate to three propositions which are urged as reasons for reversing the judgment.

It is contended in the first place that the lease is void under section 3310, Rev. Codes, which provides that "no lease or grant of agricultural land for a longer period than ten years, in which shall be reserved any rent or service of any kind, shall be valid." This section has never been construed in this jurisdiction. Substantially the same provision is found in California. Section 717, Civ. Code. So far as we can learn, it has not been before the courts of that state. This provision, as we find it in our Code, and also in California, no doubt, had its origin in section 14 of article 1 of the Constitution of New York of 1846, which is as follows: "No lease or grant of agricultural land for a longer period than twelve years, hereafter made, in which shall be reserved any rent or service of any kind, shall be valid." Counsel for appellants rely upon the decisions of the courts of New York to sustain their contention that this lease is void. There is an absence of harmony of construction of this provision, as well as of its application, in the New York cases. Counsel rely upon *Odell* v. *Durant,* 62 N. Y. 524, and *Clark* v. *Barnes,* 76 N. Y. 301, 32 Am. Rep. 306. In the case first referred to, the action was to recover the annual rent reserved in a lease of agricultural land for a term of seventeen years. It was held that the lease was void, under the constitutional provision referred to. In the next case one Clark executed two leases to Barnes—one for eight years and the second for twelve years—the last one to take effect at the expiration of the first. Barnes occupied the premises and paid the rent due under the first lease until its expiration, at which time Clark brought suit to recover possession, claiming that the lease for twelve years was void. The court construed the two leases as one, and sustained the contention. After quoting the constitutional provision, the court said: "This provision condemns all leases for a longer period than twelve years. A lease for a longer period than that would not be valid for twelve years, but the lease itself would be void *in toto.* It is not provided that no lease shall be valid for a longer term than twelve years, but the provision is that the kind of lease described shall be invalid." Other cases held the reverse, and are to the effect that such leases are invalid as to the excess only. In *Hart* v. *Hart,* 22 Barb. 606, it was held that "a lease of agricultural land for twelve years, with a covenant of renewal for twelve

years longer if the lessor shall live, and a further covenant to continue the renewal every twelve years so long as the lessor shall live, is good for the first twelve years; but the covenants for renewal are void, as being in contravention of the constitution." So, in the late case of *Parish* v. *Rogers*, 20 App. Div. 279, 46 N. Y. Supp. 1058, decided in 1897, it was doubted whether the provision in question had any reference whatever to estates for life. The case involved a lease for the natural life of the lessor and his wife, in which annual rent was reserved. It was held that the lease was not rendered invalid by the provision of the Constitution of that state, "certainly until the expiration of the twelve-year limit fixed by the said provision of the constitution." The court, in discussing the question as to whether the provision was applicable to life estates, said: "A particular prohibition upon the free alienation of property cannot be extended or enlarged beyond the terms in which the restriction is expressed by the application of any rule of liberal interpretation. On the contrary, the provision must be made to bear a restrictive interpretation, and be limited in its operation and effect by the language employed. If we hold that an estate for life is *per se* an estate exceeding twelve years in duration, and therefore void, it follows that such estates in agricultural lands, with a reservation of rent, are entirely abrogated, and the owner of property is prohibited from creating such an estate, either for his own life or that of another. * * * It will be observed that there is no declaration of intent to abrogate grants of life estates in agricultural lands in which rent or service of any kind shall be reserved; and since the creation of such estates is not prohibited, either in express terms or by necessary implication, it ill becomes the judiciary to declare such prohibition upon a mere presumption of intention nowhere indicated in the constitution. The purpose of the enactment was not to interdict the creation of such estates, but to limit the period of time beyond which they shall not extend. Where the term is specified in the lease, and exceeds the limitation, it is void *per se*; but where it is left indefinite, and its termination depends upon the contingency of death, which may happen within the period of limitation, it cannot be said to be void *ipso facto,* as being made for a period longer than twelve years. *Non constat* but that the estate will terminate within the period. It does not appear, therefore, from the terms of the grant, that it will last longer than twelve years. In respect to whether the grant is void upon its face, the words 'longer period'

should be construed as meaning a definite period, and as not applicable to estates whose duration is wholly indefinite and uncertain in its duration. This grant is not, by its terms, a lease 'for a longer period than twelve years,' but for an indefinite time, which can only be made definite or fixed by the happening of a contingency, viz., death, which may occur within the limitation. The instrument cannot, therefore, be said to create a term for a longer period than twelve years, within the meaning of the provision." The Supreme Court of Alabama has taken the same view. Section 1836, Code Ala. 1886, provides that "no leasehold estate can be created for a longer term than twenty years." In *Robinson* v. *Hayes,* 83 Ala. 290, 3 South. 674, it was held that "the lease, being void only because of the limitation upon the general authority, is void only as to the excess." We find it unnecessary to a proper decision of this case, however, to determine whether section 3310, Rev. Codes, applies to life leases, or only to leases for definite terms, or whether a lease which violates said section is entirely void or is void only as to the excess (see sections 3369, 3449, Rev. Codes), for the reason that, in our opinion, the lease involved in this case is not, in any event, such a lease as comes within the condemnation of said section. It is only leases "in which shall be reserved any rent or service" that are made invalid, and, in our opinion, this lease reserves no rent or service. There is a marked difference between a consideration paid for a life estate and "rent reserved," as that term is used in this section. This distinction was considered in the early case of *Stephens* v. *Reynolds,* 6 N. Y. 454, decided shortly after the adoption of the constitutional provision in New York. The plaintiff in that case had executed an instrument whereby the plaintiff did "lease, sell, and convey" to the defendant, "for and during the natural life" of the plaintiff, "the whole and entire use and benefit of all the real estate described," and also agreed to devise the same to defendant. The defendant agreed to support the plaintiff for her life. This lease was held to be valid. The court, in its opinion, said: "The leases or grants of land prohibited by the Constitution were such as were held by the tenants upon a reservation of an annual or periodical rent or service to be paid as a compensation for the use of the lands, in contradistinction from a consideration paid for the estate granted. It is still competent to make a grant for life or lives, upon a given consideration, to be paid for the estate. This consideration may be payable all at once, or by installments, or in services, so that it be not

by way of rent. By the constitution, there must be a reservation of rent or service. A reservation is defined to be a keeping aside or providing; as where a man lets or parts with his land, but reserves or provides himself a rent out of it for his own livelihood. Jacob's Law Dict. tit. 'Rent.' And a rent is said to be a sum of money or other consideration, issuing yearly out of lands or tenements. Plowden, 132, 138, 141. Blackstone defines rent or reditus as a compensation or return, it being in the nature of an acknowledgment given for the possession of some corporeal inheritance. And it is defined to be a yearly profit issuing out of lands. It must be a profit, but it is not necessary that it should be in money, for spurs, capons, horses, corn, and other matters are frequently rendered for rent. This profit must be certain, or capable of being reduced to a certainty. It must also issue yearly. 2 Bl. Com. 41; Jacob's Law Dict. tit. 'Rent.' Now, the consideration agreed to be rendered for the use of the lands in question, though it was to consist in services, cannot be characterized as rent, or service rendered, within the meaning of the constitution. It was a continuing consideration, and not rent. * * * The services were not reserved as rent, but were to be in consideration for the conveyance of the estate, and for the executory agreement of the appellant to devise the farm. It was, from its very nature, a continuing consideration." In a concurring opinion, Johnson, J., said: "The covenant needs only to be looked at, to see that it does not reserve rent or service, in the technical sense of those terms, but only imposes personal obligations binding on the covenantor. Rent is a certain yearly profit, in money, provisions, chattels, or labor, issuing out of land and tenements, in retribution for their use. 3 Kent's Com. 460. It is a certain and periodical return. The covenant in this case is for nothing certain in amount, nor periodical in time of performance." This case was followed in the case of *Parsell* v. *Stryker*, 41 N. Y. 480, and the above language was quoted with approval. The lease was for life. The court said: "The consideration provided by the instrument in question, for the occupation of the farm specified therein, was not rent or services, within the intent of the clause of the constitution above cited. That clause of the constitution, as all know, was not aimed at agreements like this, but against manorial leases." It was held that, to bring a lease within the prohibition of the constitution, "it must reserve rent, as rent, payable at stated periods, and that a grant or lease of land for life or for a long term of years, for a

specified consideration, whether payable in installments or at one time is not such a lease." The case last cited was followed in *Rutheford* v. *Graham,* 4 Hun. 796, in which the plaintiff "leased and farm let agricultural lands to the defendant from April 1, 1868, to April 1, 1874," on an agreement that, if the plaintiff was living at the expiration of that time, the lease was to be extended for the term of her natural life. The defendant agreed to pay $500 for the fixed period, and $400 in case of an extension. It was held that this instrument did not violate the constitution.

It is quite clear that the lease under consideration in this case conveyed a life estate, and not an estate for years. The period of enjoyment is not limited by its terms to forty years, or any other fixed period, as will appear from an examination of its provisions. It will be seen that, if the plaintiff and his wife should die before the expiration of 40 years, the lease would terminate at their death, and, further, that if they survived the forty year period it/ would not end when the forty years had elapsed, but would end only at their death; so that it is limited by death, whether that event should occur either before or after the lapse of the forty years. After reciting the receipt of the cash consideration, the lease recites that "in consideration of such payment they are to have full and absolute possession of the aforesaid premises during the full term of their natural lives without any dictation on the part of said lessor." The previous clause, reciting that the lessees are to hold the premises "for and during the full term of forty years * * * or during the full term of his natural life or during the term of his wife's natural life, or both," does not conflict with this construction, for even the language of that clause makes the lives of the plaintiff and his wife govern the period covered by the lease. As a life lease it may or may not be for a longer period than ten years, depending wholly upon the contingency of the death of the lessees. Whether, as a life lease, it is under the ban of section 3310, *supra,* in whole or in part, we do not decide, for the reason that, if it be conceded that life leases are included and are prohibited, yet it is clear that not all life leases, or all leases for years are prohibited. It is only those in which rent or service is reserved. And no rent is reserved by this lease, within the meaning of section 3310, Rev. Codes, as the provision has been construed in the cases above cited. The lease provides for the payment of no annual or periodical payments whatever. The $200 cash payment which was made at the execution

of the lease was not profit issuing out of the land, and in no sense comes within the meaning of the term "rent," as used in the above section. On the contrary it was merely a cash consideration for the transfer of the life estate in the land in question to the plaintiff and his wife. As has been seen, it is competent to make a grant of a life estate in agricultural lands. It is only leases of agricultural lands wherein rent or service is reserved which are declared invalid by section 3310, Rev. Codes. This lease reserved no rent or service, and therefore is not affected by the provisions of that section.

Counsel's next contention is that the lease is void because the lessor's wife did not join in its execution. This, they claim, was essential to its validity under section 3608, Rev. Codes, which provides that " a homestead of a married person cannot be conveyed or encumbered unless the instrument by which it is conveyed or encumbered is executed and acknowledeged by both husband and wife." This contention cannot be sustained. It is true, the twenty acre tract included in the lease was a part of the governmental subdivision of 160 acres upon which the lessor and his family resided, but no homestead was selected or homestead declaration filed prior to or after the execution of the lease. The lessor's residence was not upon the twenty acres, and after the execution of the lease the lessor still had 300 acres from which to select the homestead. In *Foogman* v. *Patterson,* 9 N. D. 254, 83 N. W. 15, we held that, "where no homestead has been selected or homestead declaration filed for record as provided by law, * * * no presumption of law arises that the debtor claims as his homestead the particular governmental quarter section upon which his dwelling house stands;" further, that the portions selected must be contiguous and must include the dwelling. By leasing the twenty acre tract the lessor declared, in effect, that the homestead thereafter to be selected should be carved out of the remaining 300 acres. This we think he had a right to do.

Finally it is claimed that "the damages given by the jury by their verdict were in excess of any damages which could have been found, based upon competent evidence." This contention cannot be sustained. We have no means of knowing whether the $400 allowed by the jury was for actual damages or for treble damages, but, in either event, the verdict has substantial support in the evidence, and cannot, therefore, be disturbed. Counsel contend that there is no evidence tending to show that the plaintiff was forcibly ejected, within

the meaning of section 5007, Rev. Codes, which provides that "for forcibly ejecting or excluding a person from the possession of real property the measure of damages is three times such a sum as would compensate for the detriment caused to him by the act complained of." We think otherwise. It is true, there is no evidence that plaintiff was put out of the premises by the actual application of physical force, but there was a show of force and threats, which accomplished the same purpose. It appears that the defendants employed one E. A. Sunderhauf to get possession of the premises for them; that the latter came to the plaintiff's house and represented that he was a deputy sheriff, and, after producing papers purporting to be of an official nature, threatened to put the plaintiff out of possession. Sunderhauf was not a deputy sheriff, and in fact no action had been instituted to recover possession. The plaintiff yielded possession under the direction of the supposed officer, and under circumstances from which the jury might properly find that the plaintiff had reason to believe that he would be put out by the application of physical force if he did not obey the commands of the supposed officer. It is not necessary that force be actually applied. "Force either actually applied or justly to be feared from the conduct of the defendant" is sufficient to constitute a forcible entry. *Frazier* v. *Hanlon,* 5 Cal. 156. "It will be sufficient if one submit upon or in consequence of apparent inability to resist the force arrayed against him, without its being shown or inferred that he was under fear of personal injury." *Berry* v. *Williams,* 21 N. J. Law, 423; *Hendrikson* v. *Hendrikson,* 12 N. J. Law 202. As was said by the court in *Dickinson* v. *Maguire,* 9 Cal. 46, in reference to a forcible detainer: "If, when the possession of the premises is demanded of the party, he, by word or act, look or gesture, gives reasonable ground to apprehend the use of force to prevent the rightful claimant from obtaining peaceable possession, this will be sufficient. It is not necessary for the claimant to wait until actual violence is resorted to." *Wylie* v. *Waddell,* 52 Mo. App. 226; *Oakes* v. *Aldridge,* 46 Mo. App. 11. In *Seitz* v. *Miles,* 16 Mich. 470, an entry by a sheriff under a void writ of restitution, which was made without physical force, was held to have been a forcible entry. The court said: "The complainant had the right to act upon the circumstances as they then appeared. * * * The course of the defendant clearly indicated a design to exert, if necessary, all the power conferred by the writ, and the complainant yielded to

such display of force." The evidence in this case, in our opinion, is sufficient to sustain a finding that the entry was forcible, within the principle of the cases above cited.

Finding no errer in the record, the judgment will be affirmed. All concur.